# CHARLESTON.

## SEBRELL v. BARROWS.

Submitted January 14, 1892.—Decided March 19, 1892.

1. EXPERT—EVIDENCE.

Where a witness is called and examined as an expert as to whether a steamboat was properly landed for the purpose of discharging a passenger, and as to what officers were required to properly man such boat, it must not only appear that the witness had sufficient knowledge and experience in reference to the subject-matter under consideration, but that he is acquainted with the class and dimensions of the boat, and the character and condition of the river and shore where the landing was made, or has heard the same described by witnesses in the case, before he can be allowed to express his opinion as an expert.

2. EXPERT—EVIDENCE.

In order to obtain the opinion of a witness on matters not depending upon general knowledge, but on facts not testified to by himself, either the witness must be present and hear all the testimony or the testimony must be summed up in the question put to him, and in either case the question must be put to him hypothetically.

*Hogg & Beller* and *Gunn & Gibbons* for plaintiff in error cited Code c. 103, s. 9; Deer. Neg. § 101; Id. § 24; 32 W. Va. 370; 11 Gratt. 697; Deer. Neg. § 13; Whar. Neg. § 302; Deer. Neg. § 15; 4 Law. Rights, Rem. and Prac. § 1941; 23 W. Va. 288, 305; 5 Hun 532; 107 Mass. 264; Id. 334; 109 Mass. 126; 1 Allen 187; 8 Gray 547; 32 N. H. 59; 23

N. H. 171; 7 Mo. App. 358; 23 N. J. L. 260; 38 Ill. 354; . 12 Heisk. 671; 36 Ia. 31; 37 Me. 250; 1 Whar. Ev. (2nd. Ed.) §§ 440–456; 29 W. Va. 410.

*Tomlinson & Wiley* for defendant in error cited 32 Barb. 144; 102 N. Y. 219; 22 Barb. 574; 4 Robert. 234; 57 Pa. St. 374; 40 Pa. St. 399; 21 Ill. 186; 79 Va. 241; 1 Sher. Red. Neg. § 57 n.; 111 U. S. 228; 24 N. Y. 430; 20 N. Y. 65; 40 Barb. 193; 25 N. J. 556; 15 Ind. 487; 12 Va. 116; 95 U. S. 297; 32 N. Y. 427; 44 N. Y. 577.

ENGLISH, JUDGE:

This was an action of trespass on the case brought by Mary S. Sebrell in the Circuit Court of Mason county against William A. Barrows the owner of the steamboat Claribell, plying between the city of Gallipolis, Ohio, and the town of Buffalo on the Great Kanawha river, claiming ten thousand dollars damages for injuries sustained by reason of the carelessness and negligence of the defendant who was the captain of said boat, and his employes and servants, in putting the plaintiff on shore at Sebrell's landing, in Mason county, W. Va., she being a passenger on said boat from the town of Leon to that point and claim-. ing that her knee was badly injured, and that she became a permanent cripple by reason of a fall from a stage plank, which slipped on the bank on account of the uneven and slippery condition of the ground on which said stage plank was carelessly placed.

The defendant demurred to the declaration, which demurrer was overruled, and the defendant pleaded "not guilty," and issue was joined thereon. The demurrer does not appear to have been relied on by the defendant in error in his brief, and, as we see no valid objection to the declaration, we presume it was interposed out of abundant caution, and was properly overruled.

The case was submitted to a jury on the 5th day of February, 1891, and resulted in a verdict for the defendant. A motion was made by the plaintiff to set aside the verdict and award her a new trial, because said verdict was contrary to the law and the evidence, and because of the rulings of the

court on the trial of said cause as to the admission of the testimony as set out in bill of exceptions No. 2, which motion was overruled, and judgment was rendered upon said verdict, from which ruling and judgment of the court the plaintiff applied for and obtained this writ of error.

The material facts proven in the case are set forth in a bill of exceptions, and from them it appears that the defendant was acting in the threefold capacity of captain, clerk, and mate. At any rate no mate or clerk was on the boat at the time this landing was made and the injury was received by plaintiff. The captain was sitting at the table, eating his supper, at the time the plaintiff passed out of the cabin to go on shore. As she stepped on the stage plank her hand was taken by a cabin boy, who states that he was working on the steamer Claribell as cabin boy, and helping ladies on and off the boat, and helping Capt. W. A. Barrows, the defendant, about the clerk's office. He details the circumstances attending the injury as follows :

He helped the plaintiff off the boat on that day. Kind of sink in the landing. Boat ran in there, and the plank was put out there over the bow of the boat. Told the men to change the plank, and put it on the side of the boat, which they did. Witness then took plaintiff by the hand, and led her out, and plank slipped, and witness stepped off on the ground, and told plaintiff to step off. Plaintiff complained of the mud, and plank commenced slipping faster, and witness then caught plaintiff by the elbow to steady her, and told her she would have to step off, and she then made a step, and slipped and fell. Witness then helped her up, and she stepped upon the bank, and fell again, and could not get up. Witness was holding her by the hand and elbow. Witness heard her say nothing about being hurt the first time she fell. The second time she said she believed some of her bones were broken. It had been raining, and was very slippery, and the men had hard work to keep their feet in carrying her up the bank, *etc.*

From this detail of the circumstances immediately surrounding the accident it appears that the cabin boy, in landing this lady passenger, assumed the duties of clerk, mate and captain, while the captain was quietly eating his sup-

per in the cabin; acting as mate and captain in directing the deck hands how and where to place the stage plank, and as clerk in leading the plaintiff ashore on said plank. There was no officer on the roof to direct the pilot in landing the boat, or the deck hands in launching the stage plank. If the captain had been at his post on the hurricane deck, he might have seen the character of the ground on which the end of the stage plank was being placed, and possibly averted the accident by having the plank placed on level ground.

The plaintiff, in her testimony, which is uncontradicted, stated that the defendant remarked when he came to her after the accident, "I ought to have been out there myself to have attended to it, and seen that it was all right."

John Hamilton, a witness for the defendant, states concisely the cause of the plaintiff's injury and how it occurred. He says: "The plank was level on the boat when the plaintiff and cabin boy started out, but was not level on the bank at that time; but the weight of the plaintiff, when she got to the end at the bank, caused the board, which had rested on its left edge, to sink to the right and slip as she raised her foot to step off."

These facts and circumstances, and many others detailed by the witnesses in the case, bear upon the question of the imputed negligence on the part of the defendant. It is unnecessary, however, to discuss or analyze the testimony adduced upon the question of negligence, as there is apparently some conflict in it, and all question as to its relative weight have been eliminated by the finding of the jury in favor of the defendant.

In the case of *Washington* v. *Railroad Co.*, 17 W. Va. 190, this Court, in the first point of the syllabus, defines negligence as "the doing of something which, under the circumstances, a reasonable person would not do; or the omission to do something in discharge of a legal duty, which, under the circumstances, a reasonable person would do; and which act of commission or omission, as a natural consequence directly following, produces damages to another."

In the second point of the syllabus the court holds that "negligence is generally a mixed question of law and fact;

but what particular facts or conduct constitute or amount to negligence is generally a question of fact for the determination of the jury from all the evidence, rather than a question of law for the determination of the court, and the most the court can ordinarily do, when the question of care or negligence depends upon a variety of circumstances, is to define the degree of care and caution required by the law and leave to the practical judgment of the jury the work of comparing the acts and conduct of the parties with the duties required of them under the circumstances. Yet there may be some cases where the question of negligence may be properly one of law for the court, as where the case presents some prominent act, not depending upon the surrounding circumstances for its quality, and in regard to the effect and character of which no room is left for ordinary minds to differ; but ordinarily the only efficient control the court can exercise over the jury in their determination of what is negligence is in the power of the court to set aside their verdict, where it is based on a false assumption of what is negligence."

The rulings in that case were followed and approved in the case of *Johnson v. Railroad Co.*, 25 W. Va. 570, and in that case (fourth point of the syllabus) the Court held that "where the case made by the evidence is such that reasonable men, unaffected by bias or prejudice, would be agreed concerning the presence or absence of due care, the court would be justified in saying the law deduced the conclusion accordingly."

In the case of *Tompkins v. Kanawha Board*, 21 W. Va. 224, JOHNSON, J., delivering the opinion of the court, said: "Did the court err in refusing to set aside the verdict and grant a new trial? The question of negligence was for the jury, and the evidence on that point was conflicting, and, upon well-established principles, this Court can not interfere with the verdict under such circumstances, as we are not able to say that by excluding all the parol evidence of the exceptor in conflict with that of the plaintiff the verdict was not warranted by the evidence."

In the case of *Black v. Thomas*, 21 W. Va. 709, this Court held (third and fourth points of syllabus) as follows: "3.

Where the evidence, not the facts, is certified in the bill of exceptions, the appellate court will not reverse the judgment, unless, after rejecting all the conflicting parol evidence of the exceptor, and giving full faith and credit to that of the adverse party, the decision of the trial court still appears to be wrong;" and in the fourth point: "4. Where matters certified in form as facts are in any respect conflicting, such certificate must be treated as containing the evidence, and not the facts."

Governed by these rulings, we would not be warranted in disturbing the verdict of the jury by interfering with their conclusion as to the weight of the evidence before them upon the points in issue.

There is, however, a question raised by the second and third assignments of error as to the legality of certain questions propounded to and answers elicited from the witnesses John Thornburg, W. A. Barrows and Frank Pickens as to whether all of the testimony which was allowed to go before the jury was such as they could legally and properly consider.

The witness Thornburg was examined as an expert, and stated that he had followed steamboating for twenty years from fourth clerk to captain, on the Ohio and Mississippi rivers; but he did not state that he had had any experience in steamboating on the Kanawha river, where this accident occurred, and he does not appear to have been asked or to have answered whether he was acquainted with the dimensions and tonnage of the steamboat Claribell; neither does it appear that he had heard any other witness on the trial speak of the dimensions and requirements of said boat; and no hypothetical question appears to have been propounded to him, based upon the facts proved in reference to said boat; and yet he was asked, "What, in your opinion, would be a sufficient number of licensed officers and crew to run and control a steamboat like the Claribell?"—which question was objected to, the objection overruled by the court, and said witness answered said question as follows: "A sufficient crew for a steamboat like the Claribell would be a captain, a pilot, and an engineer; on a boat the size of the Claribell, a watchman at night, three deck hands, would

be a plenty except in extraordinary cases. Captain can fill position of mate, pilot, and clerk, or any other position for which he may be competent. A mate is not required for daylight vessels the size or the Claribell." This question and the answer were excepted to.

How said witness Thornburg derived the information which enabled him to speak of the requirements of this steamboat, and give his opinion as to the officers necessary to man her, does not appear. It is not shown that it was derived from personal observation and actual examination of the boat, or from information derived from others; and, if derived from information, the correctness of that information does not appear; and yet he was allowed to express his opinion as to what was a sufficient crew for said boat, and to state that a captain could fill the position of mate, pilot, and clerk, or any other position for which he might be competent.

The question is whether this answer was not open to serious misconstruction, and was not well calculated to produce an erroneous impression on the minds of the jury, and thereby to greatly prejudice the plaintiff's case. We think it had that tendency. It had already been stated in evidence that the captain of this boat was performing the duties of captain and clerk, and the boat was carrying no mate, and from the answer of said Thornburg the captain might perform any of the other duties required of other officers, if he was competent. The question suggested, however, is, how many of these positions could the captain fill at the same time, and still properly claim that the boat was carrying a full complement of officers? And what did the jury have a right to infer from said answer?

Again, as to the questions asked said Thornburg as to whether it would be good steamboating to fail to put out a line in making a landing to put off a passenger, or whether it would be bad steamboating not to put out a line in order to land a passenger. Both of these questions are general, while the investigation in this case was in regard to the landing of a steamer of small size, at a certain landing on the Kanawha river; and, while it is true that said witness stated that he had steamboated on the Ohio and Mississippi

rivers for twenty years, he failed to state that he had any acquaintance with the Kanawha river, the character of its current, the peculiarities of Sebrell's landing, or the dimensions of the steamboat Claribell. What might be regarded as good steamboating with a large, heavy boat on the Ohio or Mississippi rivers might not be so considered with reference to a light boat of small size on the Kanawha river.

It does not appear that he heard the testimony of the other witnesses in regard to these facts. If he had he could not base an opinion upon them as an expert, unless they were presented in a hypothetical question. See Rog. Exp. Test. p. 39, § 25.

Rogers, in his work on Expert Testimony, page 25, § 18, also says: "For the purpose of determining the competency of the witness, a preliminary examination takes place, in which the witness may be asked to state his acquaintance with the subject-matter in reference to which his opinion is desired, and what he has done to qualify himself as an expert in that particular department of inquiry."

And in section 21, p. 30, he says : "The object of all testimony in courts is to place before the jury a knowledge of facts pertaining to the case under consideration, and it is a serious departure from this purpose ever to admit, instead of actual knowledge, mere opinion, however correct it may probably be; and therefore opinion, if admitted at all, should be as nearly approximated as possible to the actual knowledge of fact for which it is substituted, and it should always be required of an expert that he should at least be sufficiently acquainted with the subject-matter of his testimony to know what its laws are, and not merely to conjecture or to have an idea about it."

Now the proposition announced by the witness Thornburg may be true, as a general rule, that it is not bad steamboating to put off a passenger without putting out a line ; but all general rules have their exceptions, and, this investigation having been instituted in regard to a particular transaction, and being confined to the conduct of the crew of a boat in the Kanawha river, at a particular landing, it would have been proper to direct the attention of the witness to the circumstances of this particular case ; and, as it

does not appear in any manner that said witness was acquainted with 'the Kanawha river, Sebrell's landing, the steamer Claribell, or the conduct of the crew at the time the plaintiff received her injury, these facts should have been brought to his attention by a proper hypothetical question, before he was allowed to express his opinion as to the character of the steamboating evinced by the conduct of the crew of said steamboat at the time said injury occurred.

If we are correct in this regard as to the witness Thornburg, what must we say in reference to the testimony of the witness Frank Pickens, who, against the protest of the plaintiff, was allowed to express his opinion that "the boat was landed in as good condition as a boat could be landed, and that she had a sufficient crew on her to man her properly, and run her that day, when the only evidence of his experience as a steambaotman is contained in his own testimony that he was acting as fireman on the Claribell on the day the plaintiff received the injury complained of.

In Starkie on Evidence (9th Ed.,) side page 174, the author says: "And, in general, scientific men ought to be examined only as to their opinion on the facts proved, and not as to the merits of the case;" and in note 1: "Thus, in an action for unskillfully navigating a ship, a master of the Trinity House or other nautical man can not be asked whether, having heard the evidence, he considers the ship was improperly navigated, for that would be requiring him to draw a conclusion of fact, and then to give an opinion upon it, and would make him a judge, not only of the matter of skill and science but also of the truth of the facts in dispute; but he may be asked what was the duty of a captain under certain specified circumstances," (citing *Sills* v. *Brown*, 9 Car. & P. 604;" or whether admitting the facts as proved by the plaintiff to be true, he is of opinion that a collision could have been avoided by proper care on the part of defendant's servant," (citing *Fenwick* v. *Bell*, 1 Car. & K. 312; also, *Malton* v. *Nesbit*, 1 Car. & P. 70, and *Jameson* v. *Drinkald*, 12 Moore, 148.)

The proper conduct and management of a steamboat is something which requires skill and experience, and it is

not every one who has the requisite qualifications to assume and properly execute the duties of a master of a steamboat. In order that they may do so, the law requires that they shall possess the proper qualifications, and that they shall submit to an examination and obtain a license, so that the lives, limbs and property of passengers and crew may not be endangered by traveling and shipping upon a boat under the control and command of inexperienced and inefficient men. In addition to this, after these precautionary measures have been adopted to provide efficient officers to man such vessels, the law provides a remedy for injuries sustained by reason of the negligence of such officers in the performance of their duties; and when the question of negligence is properly raised, and a jury called to determine whether these duties have been properly performed, before a witness is allowed to express his opinion upon the question as to whether the boat was properly managed in making a particular landing, or carried a full complement of officers at the time, the law not only requires that the witness should be competent to speak as an expert, that he should have the knowledge and experience with reference to the matter in question which would enable him to give a correct opinion, but he must be acquainted with the boat, the condition of the river and the landing; in short, the facts and circumstances surrounding the transaction.

In the case, under consideration, the witness Thornburg showed himself to have that general knowledge of the subject of steamboating to enable him to speak as an expert, but he was not shown to have that acquaintance with the boat, the river, the landing, and surrounding circumstances, which would make him competent as an expert. Neither does it appear that he heard the testimony of other witnesses on the surrounding circumstances; while, on the other hand, the witness Pickens, although present on the occasion of the plaintiff's injury, and aware of the attending circumstances, was not shown to have sufficient knowledge and experience as a steamboatman to enable him to speak as an expert with reference to the matters detailed in his testimony.

The books lay it down that men who are shown to have skill and experience in a particular specialty may be examined with reference to questions arising from the scope of their specialty.

Rogers on Expert Testimony, page 33, § 22, says: "An expert either states general facts, which are the result of scientific knowledge or general skill, or else he testifies to opinions. If he testifies to opinions, his testimony is founded either on personal knowledge of the facts or else is based on facts shown by the testimony of others. If his opinion is desired on facts testified to by other witnesses, it should appear that he has reliable information or knowledge of what those facts are. But even in such case it is not always necessary that the witness should have been present and heard all the evidence. It is sufficient if it appears that he has heard all the testimony which is material to the subject on inquiry. And he should have heard the evidence as actually given, and not as it appears on the minutes of testimony as taken by counsel."

Wharton on the Law of Evidence (volume 1, § 513) gives the rule as follows: "In fine, in addition to the rule already given, that opinion is admissible when it is fact in shorthand, it is not necessary for a witness to be an expert to enable him to give his opinion as to a matter depending upon special knowledge when he states the facts on which he bases his opinion. It is otherwise as to matters concerning which the jury can themselves form opinions, in which cases witnesses can not state opinions which do not themselves involve the facts from which they are drawn."

Our conclusion, therefore, is that for the reasons above stated the Circuit Court erred in admitting the testimony of the witnesses Thornburg and Pickens against the protest of the plaintiff, and under the ruling of this Court in *Hall v. Lyons*, 29 W. Va. 510 (1 S. E. Rep. 582) we must presume that the plaintiff was prejudiced by such improper ruling. For these reasons the judgment complained of must be reversed, the verdict set aside, and a new trial awarded, with costs to the plaintiff in error.

REVERSED. REMANDED.