# CHARLESTON.

## Redd v. Carnahan.

### Submitted June 12, 1908. Decided March 16, 1909.

Evidence—*Expert Evidence Admissible.*
   Expert evidence is admissible on the character and sufficiency of work done in drilling an oil well. (p. 334.)

Error to Circuit Court, Marion County.
Action by Charles Redd and others against John E. Carnahan and others. Judgment for plaintiffs, and defendants bring error.

*Reversed.*

Wm. S. Haymond, Leroy Taylor, B. L. Butcher, and Edmond Engler, for plaintiffs in error.

POWELL & BRANT, W. S. MEREDITH, and U. N. ARNETT, JR., for defendants in error.

BRANNON, JUDGE:

Charles Redd, Charles A. Kelly, Jospeh D. Kelly and John C. Dillon, partners doing business in the name of Charles Redd, made a verbal contract with John E. Carnahan, Uriah H. Debendarfer and Oren C. Bradley, partners doing business in the name of the Carnahan-Debendarfer Company, by which the Redd Company agreed to drill for the Carnahan Company making a form of contract known as the Carnegie Natural Gas Company form, govern as to terms, the well to be drilled, the well to be 2,500 feet below the Pittsburgh vein of coal. The well is called the Alpheus Sine well No. 1 on the Alpheus Sine farm. For work done on this well the Redd Company sued the Carnahan Company in *assumpsit,* and recovered a verdict for $10,700, for which judgment was rendered. The defendants in addition to the plea of *non assumpsit* filed specifications of offset and recoupment; but the court refused to allow evidence of the same. The defendants bring the case to this Court.

The Redd Company claims that the bill of exceptions does not bring up the evidence; but we think it does. They also say there was no exception to the action of the court in refusing a new trial, at the time of that action, and not until after the judgment. This objection is sought to be supported by the mere fact that the statement that such exception was made comes in the judgment order after the words of judgment; but that order testifies that such exception was made, but does not say just when. It may have been at the very time when the new trial was refused. What if it was not? If made, no matter at what point of time in the proceeding in the case, we think it would be sufficient. It would negative all idea that exceptions was waived. We must not defeat hearing on appeal by technicality.

Coming now to the merits, so far as presented on this writ of error. The well was drilled to a depth of 2,150 feet when oil was struck. The defendants by telephone directed the plaintiffs not to drill any deeper until the defendants could come to the well, but to close in the well, and connect it with the tank, and procure proper connections and a casing head to shut the oil in and cause it to flow into the tank. When the owners of

the well came they requested the Redd Company to move the engine, boiler and machinery from the well to a location on another tract of land in the vicinity for which they held a lease from Myers, and begin boring a well, within a few days, so as to save the lease from forfeiture. The Redd Company objected saying they were unwilling to leave the Sine well in its then condition, without casing, as it might cave in; and then the defendants agreed that they would assume all responsibility for any damage that might result from so leaving the well, and the plaintiffs then did remove the engine, boiler and tools to the Myers location, and began that well. After five days the plaintiffs returned to the Sine well and resumed work there putting in casing. By the contract the plaintiffs were to put in the casing. Some of the casing separated and dropped into the well, and later some tools. The plaintiffs sought to get them out by fishing for them. After a time, the plaintiffs learning that the defendants would not pay for this work of casing and fishing after the discovery of oil, and claiming that the defendants had told them to drill no further, but to close in the well, had taken the well off their hands as completed, and that work thereafter was not done under the original contract, but was done as if under a new contract express or implied, refused to go further. Then the parties met, with the result that the parties executed a writing stating that in consideration that the Carnahan Company agreed to employ the Redd Company to drill two wells for the Carnahan Company, and other consideration, the Redd Company "agreed to go on and continue the work upon and complete well No. 1 located on the Alpheus Sine farm of King's run, Monongalia county, now being drilled, without any expense whatever to said parties of the first part, * * * * and fully finish and complete the same according to the contract heretofore entered into." After making this contract, the Redd Company went on for some time with the fishing for tools lost in the well and endeavoring to clear out and case the well; but later quit and wholly abandoned the work. On the trial the court refused to admit this contract in evidence. We think it was admissible as tending to repel the claim that the owners of the well had, on finding oil, accepted the well as completed and absolved the drilling company from casing and going down to other sands to the stipulated

depth; and if there had been such acceptance, as tending to show the renewal of the obligation of the original contract, a recognition by the drilling company of its duty to go further with the work under that contract. It was a question of fact whether the owners of the well had accepted the well and discharged the drilling company from further work; but by excluding this contract the court seems to have assumed as a finality that such acceptance had been made; whereas the jury should have been left to say, on all the evidence, including this contract, whether there had been such acceptance, whether there was a still continuing duty to go on with the well. This contract tends to show, if it does not conclusively show, that even if there had been an acceptance there was a duty to go on imposed by it, on valuable consideration. The contract was admissible to show that if the drilling company failed to go on, to finish the well as demanded by the original contract, the owners could recoup for money expended by them in necessary work of fishing out tools and completing the well. We think the contract ought to have been admitted in evidence, and that evidence of money so expended by the owners of the well in such work should have been admitted under the specifications of recoupment. *Natural Gas Co.* v. *Healy,* 33 W. Va. 102.

The rejection of the second contract and of evidence under the specifications of recoupment is sought to be justified by two clauses in the first contract. One is, that if the owners of the well should desire at any time before completion to *abandon* the same, they should give notice in writing to the drilling company of intention to do so, and then the drilling company should cease further drilling, and receive certain compensation. This relates to *abandonment* of the work by the well owners, a cancellation of the contract by them. There is no claim that they abandoned the enterprise. It is said that because they did not give notice in writing they could not claim any offset or recoupment; that they could not go on after abandonment of the work by the drilling company. The well owners never gave up the work, never abandoned it. And was not this a question of fact? The other clause is, that if there should be unnecessary delay in the work, or breach of covenant, the owners should have the option to terminate the contract by written notice of election to do so, whereupon they should have right

to take possession of the well and drill the well to completion. For want of this notice, it is said the owners had no right to complete the well and charge the outlay consequent. But what if the drilling company *abandoned* the work? Is it possible that if the owners did not choose to exercise this option, but, on the contrary, as the evidence shows, refused to exercise it, and demanded that the drilling company finish the well, the owners were required to let their well go to loss, lie uncompleted? This clause was intended for remedy for delay of work; but the owners did not complain of *delay*. They did not elect to exercise this option. They could exercise it or not, if there should be delay; but they did not complain of this, but insisted upon the drilling company going on. These clauses have no reference to the case of a total *abandonment* of the work. It is not denied that the drilling company quit the work. It is admitted by Redd on the stand. Abandonment waived right to written notice.

The defence offered evidence by experts to prove bad work by the plaintiffs, but the court rejected it. The witnesses offered were clearly proven to have had experience and knowledge fitting them to give evidence as experts. The art of mechanical skill of properly drilling oil wells hundreds and hundreds of feet through the different strata into the hidden bowels of the earth, the character of the strata, the proper treatment of them, the appropriate tools best suited for them, the proper casings, the cleaning the well, the fishing for and extricating of broken casings and lost tools, and other incidents in the work, are not within the knowledge of people generally. Indeed, there is no more intricate work; none requiring more special capacity, skill and experience. Clearly expert evidence as to the character of the work is admissible upon the character of the work done. The evidence of mechanics is receivable in matters of technical skill pertaining to their trade. Rogers on Expert Testimony, secs. 110, 111; 12 Amer. & Eng. Ency. L. 428-9; *McKelvy* v. *C. & O. R. Co.*, 35 W. Va. 500; *Schell* v. *Barrow*, 36 *Id.* 212. *Delmar Oil Co.* v. *Bartlett*, 62 W. Va. 700 clearly sustains this position.

We do not decide finally any questions of fact. We deal with the evidence only so far as to give our opinion as to admissibility. We hold that the writing dated 24th January, 1905, and

evidence to prove recoupment or setoff, and the expert evidence as to the character of the work, should have been admitted.

Judgment reversed, verdict set aside and remanded for new trial.

*Reversed.*