**In the Matter of the WELFARE OF D.R.D.**

**No. C7–87–617.**

Court of Appeals of Minnesota.

Nov. 24, 1987.

William R. Kennedy, Hennepin County Public Defender, Warren R. Sagstuen, Asst. Public Defender, Minneapolis, for appellant D.R.D.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Charles H. Salter, Asst. Co. Atty., Minneapolis, for respondent Hennepin County.

Considered and decided by NORTON, P.J., and MULALLY and LOMMEN, JJ.,* with oral argument waived.

## OPINION

NORTON, Judge.

D.R.D. appeals from an order of the Hennepin County District Court, Juvenile Division, referring him for adult prosecution on charges of second and third degree murder and two charges of unauthorized use of a motor vehicle, one referred from Dakota County. Following the state's motion to refer appellant for adult prosecution, the juvenile court found there was probable cause that appellant committed the murder and the two offenses of unauthorized use of a motor vehicle. After a hearing, the juvenile court granted the state's motion to certify D.R.D. as an adult, on the grounds that he is not amenable to treatment by the juvenile justice system. The state filed a notice of intent to prosecute, and D.R.D. was subsequently indicted by a grand jury for second degree murder. The court of appeals granted appellant's request to stay the criminal proceedings pending the outcome of this appeal. We affirm.

## FACTS

D.R.D., a juvenile,[1] is charged with second and third degree murder in the stabbing death of Robert Brzozowski on August 30, 1986. D.R.D. was fifteen years old at the time. The delinquency petition states that Brzozowski was murdered after a concert at the Metropolitan Sports Center in Bloomington. Shortly after midnight, appellant and the victim engaged in a shoving match in the Sports Center parking lot. Appellant pulled a knife and stabbed Brzozowski. Brzozowski fell to the ground, and D.R.D. fled to the car he had driven to the concert and left the scene. In the car, D.R.D. told his passenger that he had just stabbed someone and was in "big trouble." The victim was taken by police to Fairview-Southdale Hospital, where, autopsy reports show, he died from a single stab wound to the heart.

At 3:30 a.m., the Bloomington Police arrested D.R.D. at his home and took him to the station. After he was informed of his *Miranda* rights, appellant admitted he was at the concert, was involved in a pushing match, pulled a switchblade knife out of the waistband of his pants, and swung the knife at his opponent.

The state charges that D.R.D. was also involved in two prior crimes of unauthorized use of a motor vehicle. The petition provides that on July 31, 1986, appellant drove a moped that had been reported stolen on July 28, 1986. Additionally, the Dakota County Attorney's Office charged appellant with stealing a car on August 15, 1986.

During his detention, D.R.D. wrote two letters to friends. In one letter, appellant stated he hoped to get out of detention

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. D.R.D. was born September 1, 1970.

soon, "party" with his friends, and then go to Arizona. D.R.D. wrote a second letter stating he was going to "break out" of the detention center and kill someone. D.R.D. admitted to police he wrote the letters.

Several people testified at the hearing on respondent's motion: two Hennepin County juvenile court probation officers, Royetta McBain and William Wertzler; an employee of the Home Detention Program, Roy Elliot; two psychologists, Dr. R. Owen Nelson for appellant and Dr. James Gilbertson for respondent; and a psychiatrist, Dr. Carl Malmquist.

McBain testified she conducted a reference study of D.R.D., after which she concluded that D.R.D. would not benefit from a juvenile treatment program. She based her conclusions in part on D.R.D.'s history of treatment with the juvenile court. In 1983, D.R.D. spent three weeks in the Beta Program at the County Home School. He was later ordered to attend the County Home Alpha Program. D.R.D. spent six more weeks at the County Home School. Subsequently, appellant was dismissed from juvenile court jurisdiction for his unwillingness to cooperate with court-ordered treatment. On three occasions he was ordered to pay restitution but failed to do so. Appellant was ordered to complete an in-house chemical dependency program, Rainbow Bridge, but was discharged for his failure to participate. D.R.D. has been involved with the juvenile court at least 12 to 13 times.

William Wertzler stated that he was D.R.D.'s probation officer from December 1983 through April 1986. He concluded that "I think that we have exhausted the programs available for him in the juvenile system at this point," and that D.R.D. is not amenable to treatment and should be certified for adult prosecution. Wertzler testified that the court's use of programs with D.R.D. has been "met with much resistance." He stated that appellant has not cooperated fully, that he would cooperate initially but would not follow through, and that appellant has not benefited by the programs.

Roy Elliot testified that the Home Detention Unit is an alternative to "secure lockup"; the juveniles live at home under daily supervision by the Unit, seven days a week, 24 hours a day. D.R.D. was on the program twice, once for 11 days, another time for 35 days. Elliot stated that both times appellant did well at the outset but after a week or two "we would find we have no impact with him whatsoever." At the conclusion of the 35–day period, Elliot brought D.R.D. back to court for violations of rules, and because he didn't feel he could work with him.

At the directive of a court order, Elliot evaluated appellant for the program again, subsequent to the homicide charges. D.R.D. was denied access to the program based on Elliot's conclusion that it was too risky to release appellant from "lockup." Elliot stated he thought D.R.D. might panic and leave home and that the program had no impact on him.

Dr. R. Owen Nelson, a clinical psychologist, performed a psychological assessment of D.R.D. and testified on his behalf. He concluded D.R.D. has "conduct disturbance," that he is "socialized in the sense that he is able to develop and maintain relationships with others," and is basically nonaggressive because there is only one documented episode of aggressive behavior. He testified that D.R.D.'s problem should be treated in a secure facility.

Dr. Nelson stated that if the proper treatment facility existed in the juvenile court system, "substantial progress could be made so that he would not be a major concern to the community upon release" before D.R.D. is 19 and that there was a "good likelihood that he would * * * have a reasonably good chance of staying out of future serious conflicts with the law." Dr. Nelson testified that a conduct disorder is difficult to treat; a critical part of changing the behavior is simply the aging and maturing of the individual. Dr. Nelson acknowledged that successful treatment of the disorder requires a great deal of effort on the individual's part. He agreed that

ideally the treatment program should last longer than 2½ years.[2]

Dr. Gilbertson, a licensed consulting psychologist who specializes in forensic matters, also testified for appellant. Dr. Gilbertson agreed with Dr. Nelson's diagnosis of D.R.D. as conduct disorder, socialized, nonaggressive type. Dr. Gilbertson stated that D.R.D. escapes confrontation by his nomadic pattern of living. In the past few years his pattern has been to come into conflict with one parent and then go to stay with the other (they are divorced), or with girlfriends or their parents. He stated that conduct disorder can be treated, but he agreed that D.R.D. should be in a secure facility.

D.R.D. needs to be "held for some period of time," but two and one-half years is a "luxury of treatment" for treating appellant in the right setting, Dr. Gilbertson testified. He recommended that the "optimal" adolescent treatment program for D.R.D. is at Willmar State Hospital, and stated D.R.D. has the motivation to fulfill the program although he will be initially resistant. However, he stated that there is currently a 2-½ to 4 month waiting list for the program and rated appellant's chances for success in the Willmar program at "50/50."

Dr. Carl Malmquist, a psychiatrist, performed a court-ordered examination of D.R.D. Contrary to Dr. Nelson and Dr. Gilbertson, he diagnosed appellant as having a conduct disorder, socialized, *aggressive type*. He stated the determination whether the problem is treatable is a "difficult one," and that there is "enormous disparity" in professional opinions on how to treat such individuals. Dr. Malmquist recommended a long-term institutional stay. He stated he was reluctant to state D.R.D. could be released after three years of treatment because the history of behavior has developed over many years and the required treatment is not an instantaneous process. A locked institution is appropriate for D.R.D., according to Dr. Malmquist, to curtail his impulses to run away.

The court found D.R.D. is not amenable to treatment in the juvenile system because of the length of treatment required and the lack of a secure facility. The court concluded D.R.D. is not amenable to treatment but is not a public safety concern.

### ISSUE

Did the trial court abuse its discretion in determining that appellant is not amenable to treatment in the juvenile justice system?

### ANALYSIS

■ A juvenile court has wide latitude in determining whether to refer an individual for adult prosecution. Its decision will not be overturned unless its findings are "clearly erroneous" so as to constitute an abuse of discretion. *In re Welfare of I.Q.S.*, 309 Minn. 78, 86–87, 244 N.W.2d 30, 38 (1976).

Once the court has found probable cause to believe a juvenile committed the alleged offense, the court may order reference for adult prosecution if it also makes either of two findings. Minn.Stat. § 260.125, subd. 2(d) (1986). By clear and convincing evidence, the court must either find that the public safety is not served by keeping the individual in the juvenile court system or that he is not amenable to treatment. *Id.*

A prima facie case for certification requires the juvenile be at least 16 at the time of the offense. *Id.*, subd. 3. Where, as here, there is no prima facie case, the court must consider the totality of circumstances, including eleven factors set out in the juvenile court rules:

(a) the seriousness of the offense in terms of community protection,

(b) the circumstances surrounding the offense,

(c) whether the offense was committed in an aggressive, violent, premeditated or willful manner,

(d) whether the offense was directed against persons or property, the greater weight being given to an offense against

---

**2.** From the date Dr. Nelson testified, the juvenile justice system would have had only 2½ years to treat D.R.D.

persons, especially if personal injury resulted,

(e) the reasonably foreseeable consequences of the act,

(f) the absence of adequate protective and security facilities available to the juvenile treatment system,

(g) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, emotional attitude and pattern of living,

(h) the record and previous history of the child,

(i) whether the child acted with particular cruelty or disregard for the life or safety of another,

(j) whether the offense involved a high degree of sophistication or planning by the child, and

(k) whether there is sufficient time available before the child reaches age nineteen (19) to provide appropriate treatment and control.

Minn.R.Juv.Cts. 32.05, subd. 2.

Applying the factors above, it is clear that the trial court's decision to refer D.R.D. for adult prosecution is correct. One of the charged offenses was an aggressive, impulsive, violent act, which resulted in severe personal injury, causing death; death was a foreseeable consequence of the act; there is a lack of available locked facilities; D.R.D.'s pattern of living has been nomadic and the experts recommend long-term institutionalization to change his behavior; his previous record shows that numerous treatment programs have been unsuccessful; the murder charge involves an act of the utmost disregard for the safety of another; and there is insufficient time for the juvenile system to provide appropriate treatment. The trial court focused specifically on the absence of secure facilities and the insufficiency of time for treatment. Appellant's own witnesses agreed that a locked facility is required and that more than 2½ years is required for successful treatment of D.R.D. Although Dr. Gilbertson stated that 2½ years is more than enough time, he quali-

fied that statement when he rated D.R.D.'s chances of success as only "50/50."

In addition, the expert testimony and testimony of the probation officers suffices to meet the statutory clear and convincing standard of proof. *See* Minn.Stat. § 260.125, subd. 2. The finding that D.R.D. is not amenable to treatment is not clearly erroneous.

## DECISION

The trial court did not abuse its discretion when it found D.R.D. is not amenable to treatment.

Affirmed.