In the Matter of the WELFARE OF S.E.M., child.

No. C6–87–2259.

Court of Appeals of Minnesota.

March 22, 1988.

Ted N. Lundrigan, Lundrigan & Lundrigan, Pine River, for appellant S.E.M.

Earl E. Maus, Cass County Atty., Dean E. Emanuel, Asst. Co. Atty., Walker, for respondent County.

Considered and decided by FOLEY, P.J., and NORTON and MULALLY *, JJ., without oral argument.

## OPINION

EDWARD D. MULALLY, Acting Judge.

Appellant was referred for prosecution as an adult by order of the juvenile court. Appellant contests the court's finding that the prosecution demonstrated by clear and convincing evidence that appellant is not suitable for treatment or that the public safety is not served under the provisions of laws relating to juvenile courts.

## FACTS

Appellant S.E.M. is an 18–year–old (17 years at the time of the incident) male. He is from an average family and has average intelligence.

In the past, S.E.M. has run away from home. As a result, he spent the summer of 1986 at the Northwest Juvenile Training Center in Bemidji. He returned to school that fall and was on Christmas break at the time of this incident.

On December 26, 1986, S.E.M. went riding in an automobile with David Atkins (age 18), Wesley Pagel (age 18) and M.P. Atkins drove with Wes Pagel in the front seat. M.P. and S.E.M. rode in the back seat.

The four had been driving around drinking beer when they encountered four other people in a blue car. Some sort of "cat and mouse" game developed, leading to a "war of nerves." The blue car ended up in the ditch as a result of being struck by the car in which S.E.M. was riding.

After this, Wes Pagel insisted that they drive back to his house to get a gun. Wes Pagel and S.E.M. went inside. Pagel obtained a 30.06 bolt action rifle, and S.E.M.

* Acting as judge of the Court of Appeals by ap-     pointment pursuant to Minn. Const. art. 6, § 2.

took approximately 13 shells. Pagel loaded the rifle. They returned to the car and eventually returned to the scene of the accident.

When they arrived the four people were standing outside the blue car. The blue car apparently was against a tree and inoperable. Wes Pagel fired a warning shot over the heads of the four. One of them, Brian Wilson, approached the vehicle in which S.E.M. was riding. Wes Pagel fired twice, hitting Wilson in the head and midsection. The shots killed Wilson instantly. Wilson's friends fled into the woods and S.E.M. and the other three sped away. S.E.M. later called his parents and had them come and pick him up. Later that night and the next day, Wes Pagel was arrested and the others were brought in for questioning.

Since that time Wes Pagel has pled guilty to second degree murder.

Five months later, the Cass County prosecutor began an action against S.E.M. in juvenile court for his participation in the incident. S.E.M. was charged with second degree murder, and second degree assault. A motion was made to refer S.E.M. for prosecution as an adult. A hearing was had and on September 15, 1987, the court granted the motion and ordered that S.E.M. be prosecuted as an adult.

Each of the occupants of the car in which S.E.M. was riding gave a statement. M.P. stated that as Brian Wilson approached the car, S.E.M. said "shoot him." M.P. also stated that while the four drove away from the scene S.E.M. said "give me the gun, I'm trigger happy," took the gun and shot from the car window towards the victims.

A probation officer, Reno Wells, and a psychologist, Alan Zimmerman, completed evaluations of S.E.M. These were introduced into evidence. Probation officer Wells testified that S.E.M. is unsuitable for treatment as a juvenile, and that treatment as an adult is best. In his reference study, Wells noted that S.E.M. did not tell his parents of the incident, he yelled at Wes Pagel to shoot, that S.E.M. had played an active role in the acquisition of ammunition, he knew the danger of the rifle and yet continued with the escapade, and that

after the shooting of Wilson S.E.M. fired additional shots towards the other three.

In his psychological evaluation, psychologist Zimmerman recognized the difficulty in providing juvenile treatment. Zimmerman noted, however, that if S.E.M. would not accept placement in a juvenile facility, there would be no alternative except to refer him to the adult penal system.

Zimmerman noted that while S.E.M. was of normal intelligence and background, he was developing an anti-social personality disorder. Zimmerman noted that there was a high risk that juvenile treatment would not work, since S.E.M. might understand that he only has a few months until his nineteenth birthday and would only cooperate superficially.

## ISSUE

Did the prosecution demonstrate by clear and convincing evidence that S.E.M. is not suitable for treatment or that the public safety is not served under the provisions of laws relating to juvenile courts?

## ANALYSIS

The juvenile court has great discretion in deciding whether to refer an individual for adult prosecution. This decision will not be overturned unless its findings are clearly erroneous so as to constitute an abuse of discretion. *In re Welfare of I.Q.S.*, 309 Minn. 78, 86–87, 244 N.W.2d 30, 38 (1976); *In the Matter of the Welfare of D.R.D.*, 415 N.W.2d 419, 422 (Minn.Ct.App.1987).

A juvenile court may order a reference for prosecution as an adult, only if the court finds that:

(1) there is probable cause * * * to believe the child committed the offense alleged * * * and

(2) the prosecuting authority has demonstrated by clear and convincing evidence that *the child is not suitable to treatment or that the public safety is not served* under the provision of laws related to juvenile courts.

Minn.Stat. § 260.125, subd. 2(d) (1986) (emphasis added). In the present case the

parties have admitted that probable cause exists.

As to the suitability for treatment or threat to public safety, subdivision 3 of the statute requires:

> A prima facie case that the public safety is not served or that the child is not suitable for treatment shall have been established if the child was at least 16 years of age at the time of the alleged offense and:
>
> (1) Is alleged by delinquency petition to have committed an aggravated felony against the person and (a) in committing the offense, the child acted with particular cruelty or disregard for the life or safety of another; or (b) the offense involved a high degree of sophistication or planning by the juvenile * * *

Minn.Stat. § 260.125, subd. 3 (1986) (emphasis added). S.E.M. was at least 16 years of age at the time of the incident. The petition does allege an aggravated felony. Since both parties admit that the offense did not involve a high degree of sophistication, the question is whether S.E.M. acted "with particular cruelty or disregard for the life or safety of another."

 A juvenile cannot be referred for adult prosecution solely on the basis of the alleged offense. *In the Matter of the Welfare of R.D.W.*, 407 N.W.2d 113, 117 (Minn. Ct.App.1987) (citing *In re Welfare of K.P.H.*, 289 N.W.2d 722, 725 (Minn.1980)). The record must contain direct evidence of dangerousness in addition to the inferences which may be drawn from the commission of the offense itself. *Id.*

Probation officer Reno Wells noted that S.E.M. did not tell his parents, urged Wes Pagel to shoot, fired several shots himself, and played an active role in acquiring the ammunition. M.P., in his statement, noted that S.E.M. said "shoot him," and "give me the gun, I'm trigger happy." Furthermore, M.P. stated that S.E.M. shot from the window toward the remaining persons as they were driving away. These acts constitute cruelty or disregard for life or safety of another sufficient to meet the requirements of Minn.Stat. § 260.125.

**DECISION**

The juvenile court did not abuse its discretion in ordering S.E.M. referred for prosecution as an adult.

Affirmed.