Janet Marie Ferrell* was convicted of first degree robbery and was sentenced to serve 20 years in the penitentiary. The Court of Criminal Appeals affirmed her conviction and sentence with an unpublished memorandum opinion. We granted certiorari review to address whether the Court of Criminal Appeals erred by affirming the judgment of the trial court on any of three grounds raised in Janet's petition for certiorari:
 1. Whether the trial court erred in its jury charge on complicity by failing to charge on intent.
 2. Whether the trial court erred by denying Janet's petition for youthful offender status.
 3. Whether the trial court erred by sentencing Janet pursuant to Ala. Code 1975, § 13A-5-6(a)(4) instead of § 13A-5-6(a)(1).
Because of our resolution of the first two issues, we need not address the third; by not addressing that issue, however, we do not mean to imply that we agree with the ruling of the Court of Criminal Appeals on that issue.
In February 1989 Janet was an 18-year-old resident of Heidelberg, Mississippi, where she lived with her mother and was a senior in high school. Two weeks prior to the February 15, 1989, robbery that this case concerns, she met Fred Jones in Meridian, Mississippi, and they started dating. Jones and Janet were in Tchula, Mississippi and he convinced her to go to Louisville, Kentucky, with him, Ruby Jordan, who was an acquaintance of Janet's, and Jones's former *Page 446 
girlfriend, Nina. All four are black. Jones testified that he told Janet that it would take "an hour or two" to drive to Louisville, although it was actually a 10- to 11-hour drive. Janet testified that she did not drive, did not have a driver's license, and had intended to go to school that day.
Jones testified that while returning from Louisville, he and Ruby discussed committing a robbery; he further testified that Janet knew nothing about their plan to commit a robbery until after he and Ruby had committed it. They stopped at Bud's convenience store in Morgan County, Alabama; one female clerk was working in the store.
The clerk testified that around 11:00 p.m., a black male and a black female came into the store; that the male made her open the cash register; that he took all the money; that the male then told her to go to the store's office; that during all these events the female stood in front of the counter; that when the clerk and the male started going to the office, the female followed and all three went into the office; that the male tied her up with shoestrings; that the male and the female took her purse and jewelry; that the male and the female left the office; and that after that she heard two female voices. The clerk was found shortly after the robbers left, and she provided information about the robbers' automobile. While riding in the automobile that the clerk described, Jones, Ruby, and Janet were stopped by law enforcement officers, and they were then arrested for the robbery; Jones's former girlfriend was not with them when they were arrested.
At trial, the clerk at one point identified Janet as the female who had accompanied the male who had robbed her; later in the trial, the clerk contradicted herself and identified Ruby as the female who had accompanied the male who had robbed her.
Jones, whose trial for first-degree robbery was pending at the time of his testimony in Janet's trial, testified that Janet remained in the automobile while he and Ruby robbed the clerk and tied her up; that Janet did not leave the automobile until he, still armed with the pistol, told her to help Ruby bring out some food and beer; and that when Ruby dropped some of the beer on her way out of the store, Janet picked it up and brought it to the automobile. He also testified that he and Janet no longer date each other.
The trial court charged the jury concerning aiding and abetting, conspiracy, and complicity. One of Janet's objections to the jury charge was:
 "I also have an objection that there was no charge of intent to promote or assist in the commission of the offense. There was only — the charges concerned whether or not the person actually participated in the crime, but no charge as to their intent as they were participating."
Section 13A-2-23, Ala. Code 1975, provides as follows on complicity:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense; or
 "(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make."
(Emphasis added.)
Accordingly, Janet properly preserved for review the issue of whether the trial court instructed the jury on intent to promote or assist the commission of the offense as an element of complicity.
The complicity statute on its face requires that for a person to be legally accountable for another's behavior that constitutes a criminal offense, the individual accused of complicity must intend to promote or assist the commission of the offense. The record indicates that the trial court in its jury charge never defined complicity and never instructed the jury that the requisite intent described above was an element of complicity. *Page 447 
The State contends that the trial court's charge to the jury, when considered and construed as a whole, sufficiently instructed the jury on the elements of complicity and thus that any error would be harmless. In so arguing, the State sets out in its brief a substantial portion of the relevant parts of the jury charge, but it does not set out all the relevant portions, which is what the State asks us to consider.
The trial judge mentioned complicity twice in his charge: once when he instructed the jury that it was to determine if there was complicity and once at the very beginning of the relevant portion of the jury charge, when he stated that "aiding and abetting" was "sometimes referred to as conspiracy and sometimes complicity."
The latter statement was legally incorrect. "Aiding and abetting" is one possible element of complicity. § 13A-2-23(2). Conspiracy is a crime in and of itself, independent of complicity. § 13A-4-3. Complicity is a theory for imposing criminal culpability, for which aiding and abetting may be an element. § 13A-2-23.
Furthermore, consider the effect of the trial court's equating complicity with aiding and abetting in light of the charges that the trial court gave on aiding and abetting:
 "All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must be indicted, tried and punished as principals.
". . . .
 "This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting the active perpetrator in the commission of the offense is a guilty participant, and in the eyes of the law is equally guilty with the one who does the act.
". . . .
 "So that if a person aids or abets another in the commission of a crime, he is as guilty as the person or party who commits that crime. . . ."
In those charges on aiding and abetting, the trial court charged that if an individual aids and abets, he is as guilty as the principal. The trial court did not mention intent at all in those charges. Thus, the jury was instructed that aiding and abetting is the same as complicity and that the act of aiding and abetting alone, without regard to intent, was a basis for determining that Janet was guilty.[1]
Considering the charge as a whole certainly does not help the State's case. To be sure, the trial court mentioned intent four times during the charge: twice in relation to conspiracy, once in relation to aiding and abetting, and once in relation to "common enterprise." In relation to aiding and abetting, it charged that "Any word or act contributing to the commission of a felony, intended and calculated to encourage its accomplishment, brings the accused within this section." The trial court never read to the jury the "section" it was charging on,[2] however, and furthermore, immediately before that charge, it stated, "These are just statements of law you may find useful, you may not." Accordingly, even if the charge had otherwise been clear and sufficient on intent in complicity (it was not), the statement before the charge on intent made it unclear whether intent was required.
The closest the trial court came to charging on intent in complicity was when it charged as follows on "common enterprise":
 "For one to be criminally liable for a crime actually committed by another, the two must to some extent be in league with each other. There must be some community of interest or unlawful intent. . . ."
Considering the charge as a whole, the trial court did not properly instruct the jury as to intent as an element of complicity. *Page 448 
§ 13A-2-23. The trial court therefore erred, and the Court of Criminal Appeals erred in affirming the trial court's judgment.
Janet also argues that the trial court erred in denying her petition for youthful offender status. Before Janet was arraigned, the trial court entered an order denying the youthful offender petition, stating simply: "After investigation, the youthful offender petition is denied." That petition was denied without a hearing or any oral testimony, neither of which appears to be required under current law,Watkins v. State, 357 So.2d 156 (Ala.Crim.App. 1977), cert. denied, 357 So.2d 161 (Ala. 1978). The investigation to which the trial court's order referred was made by a probation officer, who filed a document with the trial court entitled "youthful offender report of investigation" ("youthful offender report"). The prosecution presented no evidence concerning Janet's youthful offender petition. The only evidence that the trial court had before it at the time it denied Janet's petition was the youthful offender report and some letters that were sent to it from Janet's high school teachers and principal. We will discuss those letters presently.
The youthful offender report indicated that Jones and Ruby went into the store and robbed and tied the clerk; that Jones was armed with a pistol; that Janet did not leave the automobile until all of these events had occurred; that she entered the store and helped carry "cigarettes and other store goods" to the automobile; that Janet had no prior convictions, either misdemeanor or felony; that Janet had no prior arrests, either for a misdemeanor or for a felony; that Janet lacked nine weeks completing her senior year in high school at the time she left with Jones to go to Louisville; that she completed the necessary course work to graduate while in the Morgan County jail; that there was a detainer on file from the Louisville, Kentucky, police department for another robbery Janet said occurred on the same trip; that Janet thought the trip to Louisville would only take two hours; that, in the probation officer's opinion, Janet found herself in a situation over which she had little control once she left Mississippi; that her mother and stepfather had moved to Chicago and wanted her to come live with them and go to college; that her family stayed in constant contact with Janet and were especially concerned with her legal situation; that it was the probation officer's opinion that the best interests of society would not be served by trying Janet as an adult; and that he therefore recommended that the trial court grant Janet's petition for youthful offender status.
The record contains letters that were sent to the trial court from Janet's high school teachers and principal before the youthful offender petition was denied, including a letter from her homeroom teacher/sponsor detailing her overall grade average of 83 and stating: "Janet is doing well in all her classes and is not a discipline problem. She has the units to graduate in May of this year. In homeroom, Janet is a model student, arriving on time and never causing any kind of disturbance"; a letter from her history teacher calling her "one of my better students" and describing her conduct as "great and admirable"; a letter from her American government teacher saying that she seemed to show leadership qualities and describing her as "an asset to our school system"; a letter from Janet's guidance counselor referring to her as an "ideal student" and stating that she had "always conducted herself in a pleasing way"; and a letter from her principal stating, "Janet Ferrell has conducted herself at Heidelberg High School in a very positive way during this school year. She has not posed a discipline problem of any nature during her stay here in school."
Consider the nature of the fact situation on which the chargeagainst Janet is based. Remember, at the time the trial court denied the petition, the only evidence that the trial court had before it concerning the nature of the fact situation on which the charge against Janet was based came from the youthful offender report. That report indicated that Janet's only participation in the robbery was carrying "cigarettes and other goods" to the automobile *Page 449 
after Jones and Ruby had robbed and tied the clerk. Considering the nature of the fact situation on which the first degree robbery charge was based, as that fact situation was described before arraignment to the trial court in the youthful offender report, the unanimously positive comments about Janet, and the fact that the record indicates that no evidence was presented concerning the youthful offender petition other than the letters and the youthful offender report, one must conclude that the reason the trial court denied the petition was the perceived severity of the charge itself, first degree robbery.
The statutory provisions concerning youthful offenders are set out at § 15-19-1 et seq. Section 15-19-1 provides:
 "a) A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more shall, and, if charged with a lesser crime may be investigated and examined by the court to determine whether he should be tried as a youthful offender, provided he consents to such examination and to trial without a jury where trial by jury would otherwise be available to him."
Accordingly, the Legislature has provided that first degree robbery is a charge for which Janet could petition for youthful offender status. See §§ 13A-8-41(c) and 13A-5-6(a)(1) and (a)(4).
If the Legislature provides for and permits youthful offender protection in regard to a criminal charge, then it makes no sense for the judiciary to deny that protection because of that same criminal charge in and of itself. Indeed, such a judicial ruling would make it impossible for the accused to acquire the protection that the Legislature has afforded, because the very charge serving as the basis for allowing the youthful offender petition in the first place would also be used as the reason for denying it. Accordingly, we hold that a criminal charge inand of itself cannot be used as the sole basis for properly denying a petition for youthful offender status. Thus, it was improper for the trial court to deny Janet's petition for youthful offender status based solely on the charge in and ofitself.
We are not saying that the nature of the fact situation onwhich a charge is based cannot be, in itself, a sufficient reason for denying youthful offender status; to the contrary, we hold that the nature of the fact situation on which a charge is based may, alone, be a sufficient reason for denying youthful offender status. For example, if a minor is charged with first degree assault for beating an elderly person nearly to death with a baseball bat, then the nature of the factsituation on which the first degree assault charge is based
could be, in itself, a sufficient reason for properly denying a petition for youthful offender status, although the firstdegree assault charge in and of itself could not be the basis for denying that petition. If, in this case, Janet had had the pistol, the nature of the fact situation on which the chargewas based might have been in itself a sufficient reason for denying her youthful offender petition, although the firstdegree robbery charge in and of itself could not be the basis for denying that petition. The Court of Criminal Appeals may have hinted at that distinction in Watkins, without saying it in those words.
As we have discussed, we must conclude that the trial court denied Janet's petition solely because she was charged with first degree robbery. Also, as we have discussed, that was improper. At the time the trial court considered Janet's petition, the evidence before the trial court concerning the nature of the fact situation on which the charge was based did not support a denial of the petition. The record does not otherwise support the trial court's ruling; instead, pursuant to current law, under the particularly compelling facts of this case, the record indicates that Janet's petition for youthful offender status was due to be granted.[3] *Page 450 
Accordingly, the trial court erred both in its charge to the jury and in denying Janet's petition for youthful offender status. The judgment of the Court of Criminal Appeals affirming the conviction is due to be reversed and the cause remanded. The Court of Criminal Appeals is instructed to remand the cause to the trial court with instructions to enter an order granting Janet Ferrell's petition for youthful offender status and to conduct further proceedings necessary to the disposition of the case under the youthful offender statutes.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
* Reporter of Decisions' note: This defendant's case was styled "Farrell" in the Court of Criminal Appeals, and her petition to the Supreme Court was styled "Farrell." See 575 So.2d 1252 and 579 So.2d 708. However, throughout her brief filed with the Supreme Court and in many instances in the record, including instances where she signed her own name, her name was spelled "Ferrell."
[1] The trial court defined "aiding and abetting" as "all assistance rendered by acts, or words of encouragement, or support, or presence, actual, or constructive, to render assistance should it become necessary."
[2] The only "section" that the trial court read in the relevant portion of the charge was Ala. Code 1940, Title 14, § 14, a repealed provision dealing with "principals" and "accessories." That repealed section does not mention "intent."
[3] We have not announced a standard of review in youthful offender cases and find it unnecessary to do so in this case. The Court Appeals states the standard as "almost absolute discretion." E.g. Morgan v. State, 363 So.2d 1013
(Ala.Crim.App. 1978).