604 So.2d 378 (1992)
Ex parte J.D.G.
(Re J.D.G.
v.
STATE).
1910652.
Supreme Court of Alabama.
August 21, 1992.
Barry Hess, Mobile, for petitioner.
James H. Evans, Atty. Gen., and Yvonne A.H. Saxon, Asst. Atty. Gen., for respondent.
PER CURIAM.
Writ quashed as improvidently granted.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, STEAGALL and INGRAM, JJ., concur.
ADAMS, HOUSTON and KENNEDY, JJ., dissent.
KENNEDY, Justice (dissenting).
This Court granted certiorari review in order to determine whether the Court of Criminal Appeals correctly affirmed the juvenile court's order transferring the defendant to the circuit court to stand trial as an adult.[1]
*379 J.D.G. was 14 years old when he was arrested for the offense of murder in violation of § 13A-6-2, Ala.Code 1975. Following a transfer hearing, J.D.G. was transferred from the juvenile court to the circuit court pursuant to § 12-15-34(d), Ala.Code 1975. The Court of Criminal Appeals affirmed the transfer by an unpublished memorandum opinion, and we granted certiorari review.
The 18-year-old victim, Matt Hall, was at the Motel 6 on May 3, 1991, in Mobile, Alabama, with some of his friends from Theodore High School. Hall and his friends had rented a motel room there and were having a party in the room. There were alcoholic beverages at the party. Hall and another friend, Brian Spann, drove to the motel office to rent another room but decided not to rent the extra room. Both Hall and Spann had been drinking alcohol.
Spann, age 17, testified at the transfer hearing that on the way back to their room, he and Hall passed an automobile parked in the parking lot. There was some yelling back and forth between Hall and the passengers in the automobile. J.D.G. was a passenger in the car when he was approached by Hall and Spann. Hall told Spann to go to the room and get some help in case there was a fight between Hall and the passengers in the car.
Spann stated that he returned to the parking lot with several other people. The car was parked and Spann saw Hall leaning into the car talking to the passengers. Spann stated that he saw Hall raise his hand and turn around. At this point, Spann said he heard a gunshot and saw Hall fall to the ground.
Tony Lassiter, age 19, was also in the parking lot when the shooting occurred. Lassiter had been drinking. Lassiter stated that Spann came into the motel room and said that Hall was about to be in a fight. Lassiter said he ran out the door, into the parking lot, and up to Hall; he said Hall and Lassiter were walking in a westerly direction when he saw a car driving through the parking lot, but he said that the car did not stop. Lassiter said that he was walking in front of Hall and that as the car passed them, Hall looked into the car at the person in the front passenger seat. Lassiter stated that the car passed him, made a quarter turn, and stopped near Hall. Lassiter said he saw Hall's hand enter the car window. He stated that he then saw Hall's hand come out of the window. Lassiter stated that he saw Hall make a quarter turn. He said that the passenger extended his hand out of the window and fired the gun at Hall.
Chad Hunter, age 18, said he had left the party in the motel room and was walking to the motel parking lot when a car appeared. Hunter said he saw Hall point his hand at the car, but he said he could not see if Hall put his hand inside the car. Hunter also stated that Hall had previously been involved in fights.
Michael James Britt, age 17, testified that he drove the car in which J.D.G. was a passenger on the night the shooting occurred. He stated that they went to Motel 6 in order to wait for a man to rent some rooms for them to have a party. While Britt and J.D.G. were outside near the front office, Britt stated, a red car passed them and one of the passengers made a remark to them. Britt stated that he and J.D.G. drove to where a group of people had gathered. He testified that some of the people had been "calling him and J.D.G. names." Britt stated that they were driving by very slowly when Hall reached his hand inside Britt's car and hit J.D.G. in the face. Britt stated that J.D.G. then fired the gun at Hall. He stated that he and J.D.G. went to the police station the next day.
Reecie Powell, a juvenile probation officer, testified that she evaluated J.D.G., as was mandated by the juvenile court. She recommended that J.D.G. be transferred for trial as an adult. The prosecutor asked Powell if her recommendation was based on the entire list of factors in § 12-15-34 or whether her recommendation was based *380 solely on the nature of the offense. Powell stated in pertinent part:
"Powell: The nature of the offense.
"Prosecutor: Did you consider the other statutorily mandated guidelines?
"Powell: As peripheral, but not as major
"Prosecutor: All right, I'm not asking what weight you attached to any of this, but
"....
"Prosecutor: "My question is, did you consider the totality of 12-15-34(e)?
"Powell: Yes; there would be no need to do it, if I did not."
(R.T. 103.)
Powell stated that J.D.G. had no prior record and that J.D.G. appeared to be physically and mentally normal for a 14-year-old. She stated that she also considered J.D.G.'s demeanor. Powell stated that the basis of her decision that J.D.G. should be transferred was "the extent of the crime." (R.T. 105.)
A psychological examiner, Larry Faison, testified that J.D.G. was on the high-average level of intelligence. Faison stated that J.D.G.'s psychological and emotional development were somewhat pre-adolescent and that J.D.G. had poor impulse control. However, Faison stated that he found no grounds to have J.D.G. committed to a mental health facility.
Several witnesses testified on J.D.G.'s behalf, stating that he was a fine young man and that they felt he should be treated as a juvenile. I note that the record before the trial court contained several letters from J.D.G.'s teachers describing J.D.G. as a "valuable addition" to his school. (C.R. 51.) J.D.G.'s pastor stated in a letter to the court that J.D.G. was "fairly regular" in church attendance and that he always "conducted himself in a very fine manner." (C.R. 52.) One of J.D.G.'s teachers stated, "I have nothing but praise for [J.D.G.] as a student. A teacher could not ask for a more perfect student." (C.R. 55.)
At the close of the transfer hearing, the trial court transferred J.D.G. to the circuit court. The trial court described this case:
"A tragedy; it's one of the worse tragedies that I have ever observed. There was two personalities that metone aggressive [Hall], one with low impulse control [J.D.G.]; the combination of drinking, guns and unsupervision. It is a tragedy for all. Nobody should rejoice in any decision of this Court. I have reviewed all [of §] 12-15-34, all of the factors, the nature of the present offense, the extent of his prior delinquency record, which is none; the nature of past treatment efforts, his response, which are none, his demeanor; the extent and nature of his physical and mental maturity, and the interest of the community and of the child requiring that the child be placed under legal restraint or discipline. This Court finds no reason to believe that he is mentally retarded or committable to an institution for the mentally ill in any way. This Court finds the prevailing nature of the offense to be so heavy that the case should be tried as an adult...."
(R.T. 172-73.)
The trial court's order read in pertinent part:
"On May 28, 1991, the motion to transfer for criminal prosecution of Case Number JU-91-1093.01, alleging Murder, came on for hearing pursuant to § 12-15-34 of the Code of Alabama.... The Court received testimony ore tenus, and the Court received and considered the probation officer's report pursuant to § 12-15-34(e), and the psychological evaluation report, and other evidence, and the Court considering the testimony, the probation officer's report, and consideration of commitment of the Juvenile to an institution or agency for the mentally retarded or mentally ill, and considering all aspects as required to be considered under such motion under § 12-15-34(d), specifically:
"1. The nature of the alleged offense;
"2. The extent and nature of the juvenile's prior delinquency record.
"3. The nature of past treatment efforts and the nature of the juvenile's response to such efforts.

*381 "4. The juvenile's demeanor;
"5. The extent and nature of the juvenile's physical and mental maturity; and
"6. The interests of the community and of the juvenile requiring that the juvenile be placed under legal restraint or discipline.
"It was the finding of the Court, that:
"1. Probable cause exists that the offense of Murder was committed as alleged, and that said juvenile committed said offense.
"2. The said juvenile was fourteen (14) or more years of age at the time of the conduct charged, and is alleged to have committed an act which would constitute a felonyMurderif committed by an adult.
"3. The Court finds no grounds to believe that said juvenile is committable to an institution or agency for the mentally retarded or mentally ill.
"4. Said juvenile is physically mature and has sufficient mental maturity for a person of his age.
"5. Said juvenile has no prior delinquency record.
"6. There have been no prior treatment efforts for J.D.G. in this Court.
"7. It is in the best interest of the public and the community that the motion of the District Attorney and the Assistant District Attorney to transfer Case Number JU-91-1093.01, for criminal prosecution as an adult, be granted...."
(C.R. 20-21.)
At the outset, I note that the juvenile court system is a creation of the Legislature. § 12-15-2, Ala.Code 1975. The Legislature granted the juvenile courts the full power and authority to exercise such jurisdiction as necessary to accomplish the purposes and goals of the Alabama Juvenile Justice Act. § 12-15-1.1. The general purpose of the Juvenile Justice Act is "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court, while acknowledging the responsibility of the juvenile court to preserve the public peace and security." § 12-15-1.1.
An order transferring a juvenile to the circuit court for criminal prosecution should not be reversed unless it is clearly erroneous; in reviewing such an order, the appellate court's consideration is limited to whether the lower court abused its discretion, considering a totality of the circumstances. R.L.V. v. State, 580 So.2d 91 (Ala. Crim.App.1991).
J.D.G. asked this Court to hold that a juvenile court may not base a decision to transfer a juvenile to the circuit court solely on the nature of the offense alleged and that the juvenile court in this case based its decision solely on that criterion.
Section 12-15-34, which governs the transfer of juveniles from the juvenile court to the circuit court, states that a child may be transferred for criminal prosecution if at the time of the conduct charged the child was 14 or more years of age and the child is alleged to have committed an act that would constitute a felony if committed by an adult, or if the child is 14 or more years of age and is already under commitment to an agency, department, or institution as a delinquent. Section 12-15-34(b) requires the juvenile court to conduct a hearing to determine whether it is in the best interest of the child or the public to grant the motion to transfer. In determining whether to grant a motion to transfer, the juvenile court must consider evidence of the followingand other relevant factors:
"(1) The nature of the present alleged offense.
"(2) The extent and nature of the child's prior delinquency record;
"(3) The nature of past treatment efforts and the nature of the child's response to such efforts;
"(4) Demeanor;
"(5) The extent and nature of the child's physical and mental maturity; and
"(6) The interests of the community and of the child requiring that the child *382 be placed under legal restraint or discipline."
§ 12-15-34(d).
In Whisenant v. State, 466 So.2d 995 (Ala.Crim.App.1984), the Court of Criminal Appeals wrote the following concerning the weight to be given each of the factors listed in § 12-15-34(d):
"The decision to transfer a juvenile for prosecution as an adult is a judicial one, Reeves v. State, 419 So.2d 217, 218 (Ala. 1982), involving a mandatory consideration of each of the factors enumerated in Section 12-15-34(d). Gulledge v. State, 419 So.2d 219 (Ala.1982); McKinney v. State, 404 So.2d 639 (Ala.1981). While legislation compels consideration of the six factors, Reeves, 419 So.2d at 218, the weight to be given each of those factors in balancing the interests of the juvenile and society must be left to the sound discretion of the juvenile court judge. Even though some of the factors may indicate that it would be in the best interest of the child and the public to treat the youth as a juvenile, the judge may still order treatment as an adult after weighing all the factors and circumstances involved.
"`It is not necessary that all the factors be resolved against the juvenile in order to justify the waiver of juvenile court jurisdiction, nor is it necessary that the court make an arithmetic calculation as to the weight to be assigned to each factor, but all factors must be considered. The court is not bound by the recommendations of public agencies....' 43 C.J.S. Infants § 46 (1978).
"`[T]he final determination of whether to transfer the minor for criminal prosecution must be made by the juvenile court judge, and not by the state's attorney, probation officer, experts, or a parent.' 43 C.J.S. Infants § 48. The judge can make the determination only after considering and weighing each and every factor listed in Section 12-15-34(d)."
466 So.2d at 998. See Palmer v. State, 485 So.2d 1247 (Ala.Crim.App.1986).
Most state legislatures have adopted some type of statutory scheme to provide for the transfer of juvenile offenders from the juvenile court to the circuit court. Basically, two statutory schemesjudicial waiver and legislative offense exclusion exemplify the methods by which transfer decisions are made and the policies on which they are based. Feld, The Juvenile Offense Meets the Principle of the Offense: Legislative Changes in Judicial Waiver Statutes, 78 J.Crim.L. & Criminology 488 (1987). Judicial waiver, the transfer mechanism found in virtually all jurisdictions, allows a juvenile court to waive its jurisdiction on a discretionary basis after a hearing on the child's amenability to treatment or the child's threat to public safety. Feld, supra, at 488. Section 12-15-34 is a judicial waiver statute. Judicial waiver statutes allow a juvenile court to conduct a case-by-case evaluation of a child's amenability to treatment and of his dangerousness; this practice reflects the "individualized, discretionary sentencing practices that have been the hallmark of the juvenile court." Feld, supra. The other transfer mechanism, termed legislative waiver or offense exclusion, excludes youths charged with certain offenses from juvenile court by legislatively defining juvenile court jurisdiction.
Courts in many jurisdictions with judicial waiver statutes that give the juvenile court discretion to transfer a juvenile to the circuit court based on its assessment of enumerated factors, have addressed the question of whether an order to transfer may be based solely on the nature of the offense.[2] The courts in those jurisdictions *383 have held that a decision to transfer cannot be based solely on the nature of the alleged offense.[3]
"Transfer is a severe sanction, with potentially harsh consequences: an extended detention in jail, a protracted adjudicatory process, a felony conviction resulting in social and legal sanctions, and a lengthy sentence at a secure correctional institution.... Accordingly, the transfer decision does more than choose a judicial forum for an accused youth. It invokes a jurisprudential philosophy that governs the nature of the proceedings as well as the purpose and severity of the sanctions. It also raises the important issue of when a child is no longer a child, specifically whether factors other than age are relevant for removing some youths from juvenile court jurisdiction."
Fagan and Deschenes, Determinants of Judicial Waiver Decisions for Violent Juvenile Offenders, 81 J.Crim.Law & Criminology 314, 324 (1990).
In Ex parte Farrell, 591 So.2d 444 (Ala. 1992), the 18-year-old defendant was arrested for first degree robbery; the defendant applied for youthful offender status pursuant to § 15-19-1 et seq. From the record before the trial court, it was clear that the trial court denied the petition for youthful offender status simply because of the severity of the charge itself, first degree robbery. We held that the trial court erred in denying the petition solely on the basis of the criminal charge in and of itself. We stated that "the Legislature has provided that first degree robbery is a charge for which [the defendant] could petition for youthful offender status. See §§ 13A-8-41(c) and 13A-5-6(a)(1) and (a)(4)." Farrell, 591 So.2d at 449.
"If the Legislature provides for and permits youthful offender protection in regard to a criminal charge, then it makes no sense for the judiciary to deny that protection because of that same criminal charge in and of itself. Indeed, such a judicial ruling would make it impossible for the accused to acquire the protection that the Legislature has afforded, because the very charge serving as the basis for allowing the youthful offender petition in the first place would also be used as the reason for denying it. Accordingly, we hold that a criminal charge in and of itself cannot be used as the sole basis for properly denying a petition for youthful offender status."
Farrell, 591 So.2d at 449.
"We are not saying that the nature of the fact situation on which a charge is based cannot be, in itself, a sufficient reason for denying youthful offender status; to the contrary, we hold that the nature of the fact situation on which a charge is based may, alone, be a sufficient reason for denying youthful offender status. For example, if a minor is charged with first degree assault for beating an elderly person nearly to death with a baseball bat, then the nature of the fact situation on which the first degree assault charge is based could be, in itself, a sufficient reason for properly denying a petition for youthful offender status, although the first degree assault charge in and of itself could not be the basis for denying that petition."
Farrell, 591 So.2d at 449.
*384 As stated earlier, the purpose of the transfer hearing in Alabama is to determine whether it is in the best interests of the child or of the public to grant the motion to transfer. § 12-15-34(b). I think that the overall goal of the juvenile court in deciding whether to transfer a youth should be whether the particular juvenile would benefit from the juvenile court system and its facilities. That is, would the juvenile be susceptible to rehabilitation and responsive to punishment in the juvenile court system. To help it decide whether it is in the best interests of the juvenile or of the public to transfer, the juvenile court must look at the factors in § 12-15-34(d). However, I think that it is improper for a juvenile court to transfer a juvenile to the circuit court based solely on the nature of the offense itself. The juvenile court should look to the facts underlying the offense in order to determine whether a transfer is warranted. The seriousness of the offense alone does not establish that a juvenile is not susceptible to rehabilitation in the juvenile court system.
Based on the record in this case, I find it abundantly clear that the trial court granted the State's motion to transfer J.D.G. to the circuit court based solely on the nature of the offense. The offense of murder is, of course, the most serious offense with which one can be charged. However, the facts underlying the charge of murder in this case indicate that J.D.G. was involved in an altercation with an older teenager who had been in fights previously. The death of Matt Hall was indeed senseless, but there are no facts in the record to indicate that this was a premeditated killing or that J.D.G. would be more responsive to punishment in the adult court system instead of the juvenile court system. J.D.G. had no prior record. He had not been subjected to any past treatment efforts. Nothing in the record indicates that his demeanor was negative. He was physically mature, and his mental maturity was like that of other 14-year-olds. No evidence in the record indicates that it would be in the best interests of the community or of J.D.G. for him to be punished, if convicted, in the adult criminal court system.
I think that in this case the juvenile court system is the appropriate forum for J.D.G. However, I must note that had the facts underlying the charge of murder been different and the remaining factors of § 12-15-34(d) been the same as in this case, then transfer could have been proper. For example, had this been a random, drive-by shooting by a juvenile, with the remaining factors of § 12-15-34(d) being the same, then a transfer might have been proper.
Based on a totality of the circumstances, I conclude that the juvenile court's decision to transfer was an abuse of discretion. Accordingly, I must dissent.
ADAMS and HOUSTON, JJ., concur.
NOTES
[1] While the review of the motion to transfer was pending in this Court, J.D.G. was tried for murder. He was convicted of criminally negligent homicide, a misdemeanor. J.D.G. filed a motion to stay the sentencing by the circuit court pending the final judgment on the certiorari petition before this Court. We denied the motion to stay sentencing for J.D.G.
[2] Matter of Appeal in Juvenile Action No. J-9896, 150 Ariz. 435, 724 P.2d 54 (Ariz.1986), opinion vacated, 154 Ariz. 240, 741 P.2d 1218 (1987); Matter of Appeal in Juvenile Action no. J-96430, 142 Ariz. 515, 690 P.2d 816 (Ariz.App.1984); Richerson v. Superior Court, 264 Cal.App.2d 729, 70 Cal.Rptr. 350 (1968); C.L.A. v. State, 137 Ga.App. 511, 224 S.E.2d 491 (1976); State v. Gibbs, 94 Idaho 908, 500 P.2d 209 (1972); Duvall v. State, 170 Ind.App. 473, 353 N.E.2d 478 (1976); In re Patterson, 210 Kan. 245, 499 P.2d 1131 (1972); In re Johnson, 17 Md.App. 705, 304 A.2d 859 (1973); Two Juveniles v. Commonwealth, 381 Mass. 736, 412 N.E.2d 344 (1980); In the Matter of LeBlanc, 171 Mich.App. 405, 430 N.W.2d 780 (1988); People v. Dunbar, 423 Mich. 380, 377 N.W.2d 262 (1985); In re Welfare of S.E.M., 421 N.W.2d 369 (Minn.Ct.App.1988); Matter of B.D.C., 211 Mont. 216, 687 P.2d 655 (1984); W.C.P. v. State, 791 P.2d 97 (Okla.Crim. App.1990); S.H. v. State, 581 P.2d 916 (Okla. Crim.App.1978); Commonwealth v. McKee, 307 Pa.Super. 12, 452 A.2d 878 (1982); R.E.M. v. State, 541 S.W.2d 841 (Tex.Civ.App.1976); State ex rel. S.J.C. v. Fox, 165 W.Va. 314, 268 S.E.2d 56 (1980); State v. M.M., 163 W.Va. 235, 256 S.E.2d 549 (1979).
[3] The legislatures of California, Idaho, and Michigan have since amended their statutes to allow juvenile courts to transfer minors based solely on the nature of the alleged offense.