The appellant, H.A.M., appeals the transfer of his case from the Madison Juvenile Court to the Madison Circuit Court where he would be prosecuted as an adult. H.A.M. is charged with murder, pursuant to § 13A-6-2(a)(1), Ala. Code 1975. *Page 2 
During the probable-cause phase of H.A.M.'s transfer hearing, Detective Michael Shaneyfelt of the Madison Police Department testified that, on the afternoon of February 5, 2010, he responded to a shooting that had taken place at a middle school in Huntsville. Detective Shaneyfelt interviewed H.A.M., who was a 14-year-old student at the school, as well as a number of witnesses to the shooting. H.A.M. made spontaneous statements, admitting his guilt immediately following the shooting. Witnesses stated that he walked into the bathroom following the shooting and laid the gun and some bullets down next to the sink.
H.A.M. was taken into custody and was informed of his juvenileMiranda[1] rights. H.A.M. gave both oral and written statements indicating that he had taken a .22 caliber Beretta handgun weeks earlier from the house of a friend. He admitted that he brought the gun and two boxes of shells to school that day. H.A.M. stated that he had been standing in the hall, talking to a friend when he saw the victim and started walking behind him. He pulled the gun from his pocket and shot the *Page 3 
victim in the back of his head. The victim died as a result of the gunshot wound.
Surveillance videotape from the school's security camera confirmed H.A.M.'s version of the events. The video recording was played for the court.
Detective Shaneyfelt testified that he spoke with H.A.M.'s English teacher, who told him that she had a closer relationship with H.A.M. than he had with the other teachers. She testified that he was highly intelligent, "so intelligent that he is off the charts. . . . He is a very intelligent writer. He's very creative. And he can read something and comprehend it and tell you . . . in terms what he has read almost verbatim." (R. 42.) She further stated that H.A.M. could be a loner but that he also interacted with other students. H.A.M. and the victim had both been students in the same English class, and she had never been aware of any difficulties between them.
Psychiatric assessments were performed to determine the intelligence, mental maturity, and emotional status of H.A.M. before the hearing on the State's motion to transfer the 14-year-old juvenile to circuit court to stand trial as an adult. *Page 4 
The results of those findings were admitted into evidence with no rebuttal or objection from the State. At the conclusion of the hearing, the juvenile court transferred H.A.M. to the circuit court for criminal prosecution as an adult. H.A.M. appealed from the transfer order. We affirm.
On appeal, H.A.M. argues that the juvenile court erred when it transferred the case to the circuit court. Specifically, he argues that the order certifying H.A.M. to be tried as an adult was improper under § 12-15-203(c), Ala. Code 1975, [2] because H.A.M. was committable to an institution for the mentally ill.
This Court has long held that the final determination of whether to transfer a minor for criminal prosecution must be made by the juvenile judge and not by the State's attorney, the child's probation officer, experts, or a parent. Palmer v. State,485 So. 2d 1247, 1248 (Ala. Crim. App. 1986).
In the present case, Dr. Philip J. Lazarus, a psychologist, testified for the defense that, in his opinion, based on intelligence tests, personality profiles, and various reports, H.A.M. would benefit from being committed to an *Page 5 
institution for mentally ill offenders rather than standing trial as an adult. He diagnosed H.A.M. as suffering from extreme depression and have suicidal tendencies. He also diagnosed H.A.M. as suffering from attention-deficit/hyperactivity disorder and anxiety disorder.
On cross-examination of Dr. Lazarus, the prosecutor pointed out that the majority of Dr. Lazarus's findings were based on self-reporting by H.A.M. and on reports from his parents. She further elicited testimony concerning a number of inconsistencies in the parents' statements and assessments of H.A.M.'s behavior. The prosecutor noted that the statements indicating that H.A.M. might suffer from a mental illness were made to the psychologist rather than to the police following the offense.[3] The prosecutor also questioned Dr. Lazarus about H.A.M.'s intelligence.[4] Moreover, although he determined that H.A.M. had suicidal tendencies, this finding was based on *Page 6 
statements by H.A.M., including his indication to Dr. Lazarus that he had planned on shooting himself after killing the victim but that the gun had jammed.[5] However, it was within the juvenile court's discretion to disregard this unrebutted evidence and make an informed determination based on the remaining statutory criteria.
Although the fact that this testimony by Dr. Lazarus was unrebutted is concerning, the amount of weight to be accorded such expert testimony is a matter for the juvenile judge. A.W.M. v.State, 627 So. 2d 1148, 1154-55 (Ala. Crim. App. 1993) ("The juvenile judge was authorized to discount that report-and its conclusion that `[A.W.M.] is an excellent candidate for treatment and rehabilitation'-in light of evidence that the appellant deliberately planned and willingly participated in the hostile and anti-social act of armed robbery. Compare Lackey v. State,615 So. 2d 145 (Ala.Cr.App. 1992) (when the factfinder has an objective reason to doubt *Page 7 
the validity of an expert's conclusion, it may give the expert's testimony little or no weight).").
 "Despite the fact that this is a close case and that the decision of the juvenile court is not necessarily one this Court would have reached, we cannot say that the juvenile court's transfer order was based solely on the nature of the offense or was unsupported by clear and convincing evidence. In our opinion, the decision of the juvenile court was based on the facts underlying the offense and the circumstances surrounding [H.A.M.'s] participation in the offense, in conjunction with the other relevant statutory factors."
A.W.M. v. State, 627 So. 2d at 1154.
After considering the facts underlying the offense, the circumstances surrounding the juvenile's participation in that offense, and the other relevant statutory factors, a juvenile court may properly order the transfer of the juvenile even when there is evidence indicating that the juvenile would be "`an excellent candidate for treatment and rehabilitation.'" B.L.S. v.State, 628 So. 2d 1034, 1036 (Ala. Crim. App. 1993), quotingA.W.M. v. State, 627 So. 2d at 1154.
Section 12-15-203(b), Ala. Code 1975 provides:
 "The juvenile court judge shall conduct a hearing on all motions for the purpose of determining whether it is in the best interests of the child or the public to grant the [transfer] motion. Only if there are no reasonable grounds to believe the child *Page 8 
is committable to an institution, department, or agency for individuals with an intellectual disability or mental illness, may the juvenile court judge order the case transferred for criminal prosecution."
Here, the juvenile court determined that there were no "reasonable grounds to believe [H.A.M. was] committable to an institution, department, or agency for individuals with an intellectual disability or mental illness." Thus, she went on to consider the factors in § 12-15-203(d).
Section 12-15-203(d), Ala. Code 1975, outlines the terms of transfer of cases from juvenile court to criminal court, including the relevant factors the trial court may consider in determining whether a motion to transfer should be granted. Those factors include:
"(1) The nature of the present alleged offense.
"(2) The extent and nature of the prior delinquency record of the child.
"(3) The nature of past treatment efforts and the nature of the response of the child to the efforts.
"(4) Demeanor.
"(5) The extent and nature of the physical and mental maturity of the child. *Page 9 
"(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline."
The juvenile court need not make a specific finding as to each of the six factors to be considered under § 12-15-203(d), Ala. Code 1975. If the transferring court states that all six factors of § 12-15-203(d) have been considered, then its order is sufficient. In the present case, the order by the juvenile judge states, and thereby reveals, that she considered all of these factors. C.C. v. State, 586 So. 2d 1018, 1020
(Ala. Crim. App. 1991) ("If a transferring court states that all six factors of § 12-15-34(d) have been considered, then its order complies with the rules. See Ex parte Anonymous,466 So. 2d 81 (Ala. 1984); Gulledge v. State,419 So. 2d 219 (Ala. 1982)."). See also J.S.A. v.State, 615 So. 2d 1288, 1291 (Ala. Crim. App. 1993) ("The juvenile [judge] need not make a specific finding as to each of the six factors to be considered under § 12-15-34(d) [now § 12-15-203(d], but his order must contain some statement that all the factors were considered, in order that the appellate courts can make a determination that the statutory requirements have been met. Taylor v. State, 507 So. 2d 1034 (Ala.Cr.App. 1987). *Page 10 
If the transferring court states that all six factors of § 12-15-34(d) [now § 12-15-203(d] have been considered, then its order complies with the law."). Here, the juvenile court's ordered stated that she considered all the statutory factors, listing each. (C. 72-73.)
The record reveals that H.A.M. had been adjudicated delinquent on a prior occasion for third-degree criminal mischief committed at the middle school. For this offense, he was placed on probation and, for a time, transferred to an alternative school. Although his prior adjudication may not have been of a nature to be weighed heavily toward a transfer to circuit court, it nonetheless may be considered by the juvenile court in determining whether to transfer a case to circuit court.
The record also contains detailed evidence about the nature of the alleged offense. Defense counsel conceded that the offense was a heinous act. Oral testimony and material exhibits revealed that H.A.M. shot the victim with a .22 Beretta handgun, causing a fatal wound on the back of the head. Thus, the nature of the present alleged offense adequately supports the juvenile court's transfer of the *Page 11 
instant case to the circuit court under § 12-25-203(d) (1), Ala. Code 1975.
This court, in B.L.S. v. State, 628 So. 2d 1034
(Ala. Crim. App. 1993), stated that although the nature of the offense alone may not support a transfer order, the "`juvenile court should examine the facts underlying the alleged offense and the circumstances surrounding the juvenile's participation in that offense, along with the other five factors of Ala. Code 1975, § 12-15-34(d) [now § 12-15-203(d] . N.D.T. v. State,592 So. 2d 647, 650 (Ala.Cr.App. 1991); J.S.A. v. State,615 So. 2d 1288 (Ala.Cr.App. 1993).'" 628 So. 2d at 1036, quotingA.W.M., 627 So. 2d at 1154.
Similarly, in Ex parte Farrell, 591 So. 2d 444 (Ala. 1991), the Alabama Supreme Court stated that the criminal charge alone can not support a judicial ruling denying youthful-offender status. The same rationale applies to the present case. The Court explained:
 "We are not saying that the nature of the fact situation on which a charge is based cannot be, in itself, a sufficient reason for denying youthful offender status; to the contrary, we hold that the nature of the fact situation on which a charge is based may, alone, be a sufficient reason for denying youthful offender status. For example, if a minor is charged with first degree assault for beating an *Page 12 
elderly person nearly to death with a baseball bat, then the nature of the fact situation on which the first degree assault charge is based could be, in itself, a sufficient reason for properly denying a petition for youthful offender status, although the first degree assault charge in and of itself could not be the basis for denying that petition. If, in this case, Janet had had the pistol, the nature of the fact situation on which the charge was based might have been in itself a sufficient reason for denying her youthful offender petition, although the first degree robbery charge in and of itself could not be the basis for denying that petition."
591 So. 2d at 449.
Additionally, the juvenile court's order suggests that it considered, as it had the discretion to do, the "best interests of the community" in determining that this matter should be treated as murder rather than as an act of juvenile delinquency, fulfilling § 12-15-203(d) (6), Ala. Code 1975. The record supports this finding.
The weight to be accorded to each statutory factor and other considerations in determining whether a juvenile should be transferred from the juvenile court to the circuit court for prosecution does not involve the mere tallying of the circumstances for numerical comparison; rather it is a balancing and weighing process, and one statutory factor may *Page 13 
outweigh the remaining five statutory factors. N.D.T. v.State, 592 So. 2d 1034 (Ala. Crim. App. 1991).
In this case, the juvenile court's order stated that it considered all six statutory factors and was particularly compelled to make its ruling based on the severity of the crime and taking into account the best interests of the community, as well as H.A.M.'s personal safety. Taylor v. State, 507 So. 2d 1034
(Ala. Crim. App. 1987). It made findings of fact as to the reasoning behind transferring the case to the circuit court. We find no merit to H.A.M.'s claim that the juvenile court did not consider all the statutory factors, as required by law, before ordering the transfer from juvenile court to circuit court for criminal prosecution.
Thus, the child's maturity, both physical and mental, is but one of the factors that the transferring court must consider in determining whether to grant the motion to transfer. Here, the record included testimony by the licensed psychologist who had evaluated H.A.M. for the juvenile court's determination of whether H.A.M.'s demeanor and level of mental maturity precluded transfer of his case to the circuit court. He found that H.A.M. was competent, emotionally and *Page 14 
intellectually, to stand trial as an adult. This evidence supported the juvenile court's transfer order.
In reaching its determination on a motion to transfer a child to the circuit court for prosecution as an adult, the transferring court decides how much weight to give each factor. Furthermore, the transferring court may rely solely on its independent determination of the juvenile's mental state. C.C. v. State, 586 So. 2d 1018
(Ala. Crim. App.), on return to remand, 591 So. 2d 156
(Ala. Crim. App. 1991). Even if one or more of the statutory factors supports keeping the child in the juvenile system, the juvenile court may transfer the child for prosecution as an adult if the remaining factors provide clear and convincing evidence supporting the transfer. See O.M. v. State, 595 So. 2d 514, 526
(Ala. Crim. App. 1991) (holding that the "clear and convincing evidence" standard of proof applies to the dispositional phase of a juvenile-transfer proceeding).
For the foregoing reasons, the judgment of the juvenile court is due to be affirmed.
AFFIRMED.
Welch, P.J., and Windom, Kellum, and Joiner, JJ., concur.
[1] Miranda v. Arizona, 384 U. S. 436 (1966), and § 12-15-202, Ala. Code 1975 (rights of the juvenile).
[2] This statute was formerly codified as § 12-15-34 (c), Ala. Code 1975.
[3] For instance, the parents indicated in their police report that there was no history of attempted suicide by a family member; that H.A.M. had not exhibited any aggressive behavior, difficulty sleeping or eating; and that no family member had ever been diagnosed with a mental illness. However, their answers in Dr. Lazarus's report were to the opposite. (R. 134-35.)
[4] H.A.M. had a full I.Q. score of 119, but Dr. Lazarus conceded that it could be higher.
[5] The record includes a document indicating that H.A.M. had once attempted suicide by ingesting pills while staying with his family at a hotel. However, he telephoned for help and received medical treatment. Moreover, Dr. Lazarus testified that he did not have an opinion as to whether H.A.M. would have followed through with his threat had the gun not jammed. (R. 147.) *Page 1